[No. F043826. Fifth Dist. Dec. 13, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTONIO RODRIGUEZ NAVARRO, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

---

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I.

**COUNSEL**

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, David A. Rhodes and Clayton S. Tanaka, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**VARTABEDIAN, Acting P. J.**—Defendant Antonio Rodriguez Navarro was convicted of several sex crimes against his daughter and stepdaughter. He appeals, claiming the trial court erred when it denied his motion for mistrial. We disagree. In a supplemental brief, defendant argues that the trial court could not impose consecutive sentences based on facts beyond those found true by the jury. In the published portion of this opinion, we determine that the facts in question were found true by the jury. We affirm.

## FACTS

Patricia N. married defendant in 1992. Defendant's daughter A was born in 1992 and began living with Patricia and defendant when she was eight months old. Patricia's daughters from a previous relationship, J and B, lived with their grandmother, but sometimes stayed with Patricia and defendant.

In 2002, B was referred to a social services counselor for Tulare County. B said she had been molested and she was worried about her younger sisters. The counselor told B that B needed to gather more information to determine if her sisters were in danger.

On February 1, 2002, B went to A's school to talk to her. B told A's teacher that she had been molested and she needed to talk to A to see if A had been molested. A's teacher was worried about A and had previously asked her if she had been molested. A told the teacher no. The teacher allowed B to speak to A outside of the classroom door. After a short period of time, the teacher opened the door; A and B were crying. B nodded her head to the teacher. The teacher called the office and the nurse came and took A and B to the office.

The nurse called child protective services and the police. J was transported to A's school. All of the girls were interviewed.

A testified that defendant began molesting her when she was six years old. The molestations continued until the day she spoke to the school nurse and the police; in fact, defendant had molested her that morning before she went to school. A said that defendant would make her touch his "private" part and rub it until "white stuff" came out. Defendant also got on top of A and "humped" her. Defendant made A put her mouth on his private part and he also touched her private with his mouth. Sometimes A would have to put condoms on defendant. Defendant made A watch "nasty" movies. Defendant would feel A's private part. A said that this happened in numerous houses (they moved several times), and sexual acts happened two to three times a

week. A said that defendant told her not to tell anyone or he would put his private in her private "real hard." (Count 1—Pen. Code, § 288.5, continuous sexual abuse of a child.)

J is defendant's stepdaughter and was born in 1987. J testified that when she was five or six years old, she woke up one night with her pants down and defendant touching her. This happened more than once. The touchings continued until J was 14. Defendant began teaching J to drive; in return defendant would want sexual favors. The first time this occurred, defendant took J out in the car. They stopped by a ditch and defendant got out of the car. When he did not return for quite some time, J went looking for him. She found defendant with his penis hanging out of his pants. J returned to the car. Defendant followed. Defendant asked J what he would get in return if he let her drive. J offered him money, but defendant wanted J to masturbate him. J did and then they returned home. Defendant told her not to say anything. (Count 3—Pen. Code, § 288, subd. (c)(1), lewd and lascivious acts with a child age 14 or 15 when the perpetrator is at least 10 years older than the victim.)

On another occasion, defendant took J driving. J's friend Kristine went with them. Defendant and J got out of the car and defendant asked J to masturbate him. She said no because Kristine was in the car; she asked Kristine to not leave her alone with defendant. Defendant furnished marijuana to Kristine and J. They returned home without any sexual acts occurring.

On another occasion, J and defendant went to the ditch. On the way out from the ditch, defendant stopped by a tree. J began masturbating defendant but she could not finish because she began to vomit. (Count 5—Pen. Code, § 288, subd. (c)(1), lewd and lascivious acts with a child age 14 or 15 when the perpetrator is at least 10 years older than the victim.)

One day around Christmas, defendant let J drive the car. When she returned to the house on Harold Street, defendant had J masturbate him in the bathroom. (Count 4—Pen. Code, § 288, subd. (c)(1), lewd and lascivious acts with a child age 14 or 15 when the perpetrator is at least 10 years older than the victim.)

When they were living on Harold Street, defendant asked J to show him her private part. J showed him her pubic hair. No touchings occurred on this occasion. In return defendant gave her "crank" (methamphetamine). Defendant furnished drugs to J on several other occasions. J recalled one time defendant gave her drugs when she was in a car at the side of the house. Other times defendant would leave J crank but not be present when she used it. J did not remember any time that defendant gave her crank on an occasion

when she touched him sexually. (Count 7—Health & Saf. Code, § 11380, solicitation of a minor to use a controlled substance.)[1]

J's mother was angry with J after she reported the incidents and would not speak to her. At her mother's urging, J went to the police station with her mother and sought to drop all of the charges against defendant involving J.

B testified that when she was young, she woke up several times to find defendant touching her on her chest on top of her clothes. One time B felt defendant touch her thigh area. These touchings occurred over an extended period of time.

### Defense

Defendant testified on his own behalf. He denied that he engaged in any inappropriate touchings of B, A, or J. In addition, defendant presented a character witness and testimony of police officers and investigators setting forth inconsistencies in the victims' statements and testimony at trial. In addition, J's cousin testified that J told her that all of the allegations were a lie.

## DISCUSSION

### I.[*]

### Motion for Mistrial

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II.

### Consecutive Sentences

Regarding the count 1 conviction for continuous sexual abuse against A, the trial court imposed the midterm sentence of 12 years. For counts 3, 4, and 5 (lewd and lascivious acts against J), the court imposed a consecutive eight-month sentence for each count. It imposed a two-year consecutive sentence on count 7 (furnishing drugs to a minor, J).

---

[1] The jury could not reach a verdict on counts 2 and 6, and the court declared a mistrial as to these counts. These two counts involved lewd and lascivious acts against J.

[*]See footnote, *ante*, page 1175.

The court gave the following statement of reasons for the consecutive sentences: "With regards to the sentences, they should definitely be run consecutively. They're separate acts involving separate victims involving acts that occurred on separate occasions. They're not acts that occurred all at one time. They're acts that occurred over a long period of time, first with regards to [A] and as to Count 1 she's one victim, and that's going to be the primary term.

"As to the other counts, involving [J], the three counts that the jury convicted him on as to the 288 C's were all different acts that occurred on different dates. They were not acts that occurred at the same time.

"And as to the drug-related offense, that doesn't even have any common factors with the sexual offenses, so those—that should also be a consecutive sentence."

Defendant contends the trial court's imposition of consecutive sentences constituted a violation of his Sixth Amendment right to a jury trial under *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531]. Defendant claims that none of the factors used by the trial court were presented to or found true beyond a reasonable doubt by the jury. He asserts that the court could not impose a consecutive sentence based upon factors beyond those found by the jury verdict alone. He argues that *Blakely* does not permit the court to impose a consecutive sentence when the jury was not presented with the question of whether consecutive sentences should be imposed and did not make commensurate findings beyond a reasonable doubt.

In *Blakely v. Washington, supra,* 542 U.S. at page 303 [124 S.Ct. at p. 2537], the court held that a trial court may not impose a sentence above the "statutory maximum" based on additional facts not found by the jury beyond a reasonable doubt. The statutory maximum "is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*"

Blakely entered a guilty plea to one count of second degree kidnapping and also admitted that the kidnapping involved domestic violence and the use of a firearm. The standard range sentence in Washington for a second degree kidnapping with a firearm was 49 to 53 months. Under the Washington sentencing scheme, a trial court may depart from the standard range and impose an exceptional sentence if it finds aggravating factors justifying the departure. One of the enumerated grounds for departing from the standard range in a domestic violence case was that the defendant acted with "deliberate cruelty."

After a three-day bench hearing, the trial court determined that Blakely acted with deliberate cruelty and imposed an exceptional sentence of 90 months.[2] Blakely appealed, claiming that he was deprived of the right to have a jury determine all of the facts essential to his sentence beyond a reasonable doubt. After the Washington Court of Appeals affirmed his conviction and the Washington Supreme Court denied discretionary review, the United States Supreme Court granted certiorari.

■ The United States Supreme Court found the situation in *Blakely* required application of the rule it had expressed in *Apprendi v. New Jersey* (2000) 530 U.S. 466 [47 L.Ed.2d 435, 120 S.Ct. 2348]: " 'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " (*Blakely v. Washington, supra,* 542 U.S. at p. 301 [124 S.Ct. at p. 2536].) The court found that Blakely was sentenced to more than the statutory maximum of the standard range based on the finding that he acted with deliberate cruelty, a fact neither found by a jury nor admitted by the defendant. The court clarified what was meant by the "statutory maximum": "[T]he relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' [citation] and the judge exceeds his proper authority." (*Id.* at pp. 303–304 [124 S.Ct. at p. 2537].)

The *Blakely* court thus found that the trial court exceeded its authority when it imposed the exceptional sentence based on a fact neither found by a jury nor admitted by the defendant. The facts admitted in the guilty plea were insufficient to impose the increased sentence because in Washington, " '[a] reason offered to justify an exceptional sentence can be considered only if it takes into account factors other than those which are used in computing the standard range sentence for the offense.' " (*Blakely v. Washington, supra,* 542 U.S. at p. 299 [124 S.Ct. at p. 2535].) Where the judge acquires the authority to impose an enhanced sentence only upon finding some additional fact, that fact must be proved beyond a reasonable doubt to a jury or admitted by the defendant. The court found that the exceptional sentence was invalid because it did not comply with Blakely's Sixth Amendment right to a jury trial.

The issue of the application of *Blakely* to consecutive sentences is currently before the California Supreme Court in *People v. Black*, review granted

---

[2] The trial court found other aggravating factors, but for reasons not pertinent here, the United States Supreme Court focused only on the deliberate cruelty factor.

July 28, 2004, S126182. We need not decide the more difficult question of whether *Blakely* should be applied to decisions to impose consecutive sentences, because in this instance the consecutive sentences imposed by the trial court do not run afoul of the rules set forth in *Blakely*.

Contrary to defendant's assertion, *Blakely* does not require that the jury make the decision of whether or not an enhanced sentence should be imposed. *Blakely* requires that the facts underlying an enhanced sentence be found true beyond a reasonable doubt by the jury; it does not require that the jury be given the power to decide if, in fact, an enhanced sentence will be imposed. The trial court makes that decision.

We further find incorrect defendant's assertion that the jury did not find true any of the factors used by the trial court in imposing consecutive sentences. The jury found true the special allegation that defendant committed violations against more than one victim in counts 1, 3, 4 and 5. (Pen. Code, § 1203.066, subd. (a)(7).) That the victim in count 1 is different from the victim in counts 3, 4, 5, and 7 is self-evident from the verdict forms.

Although the information charged overlapping time frames,[3] the verdict form for counts 3, 4, and 5 set forth particular acts for each count. Count 3 alleged the first time J masturbated defendant at the ditch; count 4 alleged the time J masturbated defendant in the bathroom on Harold Street; and count 5 alleged the time J masturbated defendant after he stopped down the road from the ditch area. J testified that these incidents were completely separate; there was no evidence whatsoever that would have supported a finding that the incidents did not occur on separate occasions. Thus, in finding defendant guilty of each particularized count, the jury found that defendant committed crimes on separate occasions.

The same is true about the crime of furnishing a drug. J testified generally that defendant never gave her drugs on any of the occasions when she masturbated him and specifically testified that no drugs were offered during the count 3 incident and that nothing was promised to her during the count 5 incident. There was no evidence that defendant supplied drugs to J during any of the relevant times pertaining to counts 3, 4, and 5. Thus, in finding defendant guilty of furnishing drugs to a minor, the jury found a separate occasion because that was the only evidence offered to support the verdict.

The facts used by the trial court in imposing consecutive sentences were contained within the verdicts of the jury and did not require the trial court to

[3] For count 1, the time frame was April 4, 1998, to February 1, 2002; for count 3 the time frame was September 6, 2001, to January 31, 2002; for count 4 the time frame was December 20, 2001, to January 7, 2002; and for counts 5 and 7 the time frame was the same as count 3.

make additional independent findings of fact. Thus, even if *Blakely* were to apply to a trial court's decision to impose consecutive sentences, the trial court's decision to impose consecutive sentences here was based on facts found within the verdict beyond a reasonable doubt; this determination did not deprive the defendant of his right to a jury trial.

## DISPOSITION

The judgment is affirmed.

Harris, J., and Levy, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 2, 2005. George, C. J., did not participate therein.